**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DIANN H. VIDEAN** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:04-CV-1003-P** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security** | § | |
| **Administration,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's Order of Reference, entered July 2, 2004, Plaintiff Diann H.

Videan's ("Videan") social security appeal, filed May 11, 2004, has been referred to the United

States Magistrate Judge for report and recommendation. For the reasons stated below, the Court

recommends that the decision of the Commissioner of Social Security Administration

("Commissioner") be **AFFIRMED in part** and **REVERSED** and **REMANDED in part**.

**I. BACKGROUND**[1]

**A. Procedural History**

This is a social security case. Videan seeks judicial review of a final decision by the

Commissioner, denying her claim for disability benefits under Title II of the Social Security Act.

Videan filed an application for Title II disability benefits on November 1, 2001, claiming a disability

onset date of June 13, 2001. (Tr. at 84.) Videan's application was denied both initially and upon

reconsideration. (*Id.* at 67, 61.) Videan then requested an administrative hearing before an

---

[1]The following background facts come from the transcript of the administrative
proceedings, which is designated by "Tr."

Administrative Law Judge ("ALJ").  (*Id.* at 119-20.)  Following a hearing on October 20, 2003, the ALJ issued an unfavorable decision on January 28, 2004.  (*Id.* at 286-319, 9-12.)  The ALJ concluded that, although Videan's mental impairment is considered "severe," she is capable of performing semiskilled work.  (*Id.* at 17.)  Additionally, the ALJ found that Videan possesses the residual functional capacity ("RFC") to perform a significant range of sedentary work as either a receptionist or data entry clerk.  (*Id.*)  On April 2, 2004, the Appeals Council denied Videan's request for review, thereby rendering the ALJ's unfavorable decision the final decision of the Commissioner.  (*Id.* at 4-6.)

The case is now before this Court.  Videan contends that new evidence establishes that her mental impairment satisfies Listing 12.04, thus establishing that she is disabled *per se*, and that the ALJ's finding that she can perform sedentary work is inconsistent with the new evidence.  (Pl.'s Br. at 6.)  Videan also argues that substantial evidence does not support the ALJ's unfavorable decision. (*Id.* at 7-10.)  More specifically, Videan asserts that the ALJ did not address "significant important evidence" when determining her RFC and that Videan is unable to work full time on a "regular and continuing basis."  (*Id.* at 7-9.)  Videan further argues that the ALJ's reliance on the Vocational Expert's ("VE") testimony does not satisfy the substantial evidence standard because the hypothetical question posed to the VE was insufficient.  (*Id.* at 9.)

The Commissioner first argues that the additional evidence submitted by Videan does not indicate that she is disabled and that the additional evidence post-dates the ALJ's decision.  (Def.'s Br. at 3, 7.)  Second, the Commissioner argues that substantial evidence does support the ALJ's decision.  (*Id.* at 7-8.)

**B.  Factual History**

**1.  Plaintiff's Age, Education, and Work Experience**

Videan's date of birth is May 9, 1955.  (Tr. at 84.)  She has a bachelor's degree in history.  (*Id.* at 289.)  Videan's past relevant work was as a project manager, administrative assistant, and recruiting systems administrator.  (*Id.* at 103.)

**2.  Plaintiff's Medical Evidence**

In her disability report, signed November 5, 2001, Videan reported her disabling conditions as "low back pain, stiffness, [and] lack of stamina."  (*Id.* at 88.)  Videan claimed that her conditions limited her ability to sit for long hours, bend, and lift.  (*Id.*)  Videan also claims a mental impairment.  (*Id.* at 301-05.)  In light of its recommendation outlined below and because Videan's mental impairment is not relevant to the Courts substantive discussion, the Court will only review medical evidence regarding Videan's physical impairments.

Videan was referred to Dr. John Wey ("Dr. Wey"), an orthopedic specialist, for her back pain, and Dr. Wey diagnosed her with left sacroiliitis.  (*Id.* at 144.)  On June 26, 2000, Videan consulted with Dr. Salvatore Campo, Jr. ("Dr. Campo") regarding back pain that Videan described as having become a constant, sometimes gripping, and sometimes dull pain.  (*Id.* at 140.)  Based on a MRI of Videan's lumbar spine, Dr. Campo diagnosed her with left sacroiliac joint dysfunction, left conjunctivitis, bulging discs, and degenerative discs disease of the lumbar spine.  (*Id.* at 142.)  In an attempt to reduce her back pain, Dr. Campo performed a paravertebral facet nerve block and administered a left sacroiliac joint injection on July 11, 2000.  (*Id.* at 136.)  On August 15, 2000, Dr, Campo administered to Videan an epidural steroid injection for her lumbar disc disease and radicular pain.  (*Id.* at 131.)

After the steroid injections administered by Dr. Campo proved unsuccessful, Videan consulted with Dr. Jose A. Duarte, Jr., who recommended that she undergo a lumbar sympathetic nerve block, which Dr. Campo performed on September 12, 2000.  (*Id.* at 129, 126.)  Videan continued to have lower back pain despite multiple epidural steroid injections.  On May 23, 2001, a CT scan of Videan's spine revealed a broad based disk bulge/protrusion at the L3-4 and L4-5 levels.  (*Id.* at 193.)  After reviewing the CT scan, Dr. Jerold E. Lancourt ("Dr. Lancourt") recommended that Videan undergo a laminectomy surgery, which was performed on June 13, 2001.  (*Id.* at 192, 149.)  Videan's expected recovery time was approximately six weeks to three months.  (*Id.* at 175.)

On July 17, 2001, Dr. Martin L. Lazar ("Dr. Lazar"), Videan's treating neurosurgeon, reported that Videan was feeling "great and is walking three miles daily."  (*Id.* at 167.)  On August 22, 2001, Dr. Lancourt released Videan to perform her full-time work duties with the following capabilities: sitting full-time with frequent changes in position, standing and walking, pushing and pulling limited to twenty pounds, and lifting and carrying five to ten pounds.  (*Id.* at 188.)  However, Dr. Lancourt noted that Videan was "doing relatively poorly" with regard to lower back pain.  (*Id.* at 186.)  In his report on September 10, 2001, almost three months postoperative, Dr. Lazar reported that Videan had an occasional catch in her left sacroiliac join but was walking two and a half miles daily and that her wound was well healed.  (*Id.* at 166.)  Dr. Lazar discharged Videan from active neurosurgical follow-up on the same date but recommended that she continue with Dr. Lancourt's rehabilitation program.  (*Id.*)  In Dr. Lancourt's October 22, 2001 report, he noted that Videan was "certainly better than she was, but has residual problems."  (*Id.* at 184.)  He also noted that, when she attempted volunteer work, she was only able to perform four hours of "work and sitting."  (*Id.*)

4

A Residual Functional Capacity Assessment, completed by a physician with Disability Determination Services ("DDS") on March 11, 2002, revealed that medical and non-medical evidence did not fully support Videan's alleged physical limitations.  (*Id.* at 237.)  The DDS physician established that Videan was able to stand, walk, and sit for about six hours in an eight hour workday, occasionally lift and carry twenty pounds, and frequently lift and carry ten pounds.  (*Id.* at 233.)  On January 8, 2003, Dr. Frederick Cremona affirmed the March 11, 2002 assessment.  (*Id.* at 232.)

### 3. Plaintiff's Hearing

Videan's hearing took place on October 20, 2003.  (*Id.* at 287.)  Videan was not represented by counsel at the hearing because her attorney withdrew prior to the hearing.  (*Id.*)  Videan, however, assured the ALJ that she was "absolutely" comfortable with having the hearing without an attorney.  (*Id.*)

During her testimony, Videan explained that she underwent back surgery for a laminectomy in June 2001.  (*Id.* at 291.)  In August 2001, Videan was laid off from work prior to her return after surgery, but she testified that she was unsure whether she could have maintained her past job had she not been laid off.  (*Id.* at 292, 299.)  Since Videan was laid off, she has been looking for work despite having "intermittent back issues."  (*Id.* at 292.)  Videan described her lower back pain as debilitating, unpredictable, and requiring three to four days of bed rest a month.  (*Id.* at 291, 293.)  Videan testified that repetitive motion, such as vacuuming and sweeping, causes back pain and that she could not sit, lie, or stand for extended periods of time.  (*Id.* at 293.)  Videan further stated that, "on a good day," she could sit for up to three hours and stand for one hour before she had to either get up and walk around, stretch, sit with her feet elevated or lie with her feet elevated for twenty

minutes.  (*Id.* at 296-97.)  However, Videan is able to walk up to three miles as she believes that walking strengthens her condition.  (*Id.* at 298-99.)  Videan's most comfortable position is lying with her feet elevated, and out of an eight hour "good" day, Videan would spend two hours lying with her feet elevated.  (*Id.* at 297.)  Videan admitted that she takes Hydrocodone for the pain but tries not to take her muscle relaxer at all because it causes drowsiness.  (*Id.* at 294.)

With regard to her mental impairment, Videan stated that she has been diagnosed as clinically depressed since the early 1970s[2].  (*Id.* at 302.)  At the end of September 2003, Videan began seeking treatment from a psychiatrist, who diagnosed her with bipolar disorder.  (*Id.* at 302.) Videan testified experiencing "deep, dark, horrible depression, followed by periods of . . . manic, happy, rosy outlook."  (*Id.*)  Videan is taking medication for her disorder.  (*Id.* at 303.)

Next, Dr. A. Cicerello ("Dr. Cicerello") testified as a medical expert who had reviewed the report from Videan's Consultative Examination.  (*Id.* at 309-10.)  Dr. Cicerello testified regarding the psychological aspect of Videan's condition.  Dr. Cicerello stated that Videan had been diagnosed with a "major depressive disorder" and that, although her mental impairment is considered severe, she does not meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.  (*Id.* at 310-11.)  Dr. Cicerello further testified that Videan had mild difficulties with daily living activities and social functioning.  (*Id.* at 310.)  Moreover, Videan showed a fair level of concentration and persistence, which resulted in a Global Assessment Functioning score of fifty.[3] (*Id.*)

---

[2]On a questionnaire/information form submitted to Thorntree Psychiatric Associates, Videan reported that she had been clinically depressed since the early 1980s.  (Tr. at 281.)

[3]The psychiatric evaluation completed by Dr. Morning states that Videan's Global Functioning Assessment score is sixty.  (Tr. at 210.)

Finally, the VE testified regarding Videan's exertional level.  The VE classified Videan's past work as an administrative assistant (light strength, skilled, sedentary).  (*Id.* at 314-15.)  The VE concluded that Videan was unable to perform her past relevant work because she would be unable to complete a normal work day.  (*Id.* at 315.)  The ALJ asked the VE if, assuming that Videan could not perform skilled work, did semiskilled jobs exist that she could perform, and the VE answered affirmatively.  (*Id.* at 316.)  The VE indicated that such work consisted of the following: a receptionist position (semiskilled sedentary), in which 473,000 positions existed nationally and 9,000 existed in the Dallas Metroplex; a data entry clerk (semiskilled sedentary), in which 625,000 positions existed nationally and 17,000 existed in Dallas; and a general office clerk (light strength, semiskilled sedentary), in which 327,000 positions existed nationally and over 6,000 in Dallas.  (*Id.*)  The ALJ then asked the VE if Videan could perform the above mentioned jobs assuming she had the physical limitations that she described.  (*Id.* at 317.)  The VE responded that if Videan needs long rest breaks to lie down during the day, then she would not be able to perform the jobs because such activity would not be accommodated in the work place.  (*Id.*)  The VE further testified that 139,000 order clerk positions, or similar positions, exist nationally, and 2700 positions in Dallas, for someone with Videan's past work experience who is able to perform unskilled work.  (*Id.*)

### 4.  The ALJ's Findings

The ALJ issued an unfavorable decision on January 28, 2004.  (*Id.* at 9-18.)  After determining that Videan's allegations regarding her limitations were "not totally credible" in light of other evidence, the ALJ concluded that Videan "has only mild limitations in daily activities, mild difficulty in maintaining social functioning and, moderate limitations in maintaining concentration,

persistence, and pace." (*Id.* at 15.) Thus, Videan's mental impairment only limits her to semiskilled

work. (*Id.* at 17.) Furthermore, the ALJ determined that, although Videan is unable to perform any

of her past relevant work, she retains the RFC to perform a "significant range of sedentary work"

with "frequent changes in position." (*Id.*)

Based upon these limitation and the VE's testimony that a significant number of jobs in the

national economy exist that Videan could perform, the ALJ ultimately concluded that Videan "was

not under a 'disability,' as defined in the Social Security Act, at any time through the date of this

decision." (*Id.*)

## II.  **STANDARD OF REVIEW**

To receive Social Security benefits, Videan must establish that she is disabled for purposes

of the Social Security Act.  *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v.

Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The Social Security Act defines a disability as "the

inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period not less than [twelve] months."  42 U.S.C. § 423d(1)(A);

*Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner uses the following sequential five-step inquiry to determine whether a

claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity

will not be found disabled regardless of medical findings; (2) an individual who does not have a

"severe impairment" will not be found to be disabled; (3) an individual who "meets or equals a listed

impairment in Appendix 1" of the regulations will be considered disabled without consideration of

vocational factors; (4) if an individual is capable of performing the work he or she had done in the

past, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes him or her from performing his or her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). The claimant bears the burden of proving he or she is disabled under the first four steps. *Leggett*, 67 F.3d at 564. If at any point during the examination of the first four steps the Commissioner determines the claimant is or is not disabled, the inquiry terminates. *Id.* If the claimant meets his or her burden under the first four steps, the Commissioner then bears the burden at step five to show the claimant is capable of performing other gainful employment available in the national economy. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Commissioner may satisfy this burden by referencing the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination receives great deference. *Leggett*, 67 F.3d at 564. Title 42, section 405(g) of the United States Code Annotated limits judicial review of the Commissioner's findings to: (1) whether substantial evidence supports the decision and (2) whether the Commissioner utilized the proper legal standard. 42 U.S.C.A. § 405(g) (1999); *Greenspan*, 38 F.3d at 236. Substantial evidence is "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but need not be a preponderance." *Leggett*, at 67 F.3d at 564. The Court does not reweigh the evidence, retry the issues, or substitute its own judgment for that of the Commissioner. *Greenspan*, 38 F.3d at 564. Instead, the Court scrutinizes the record to determine whether substantial evidence supports the

decision.  *Id.*

## III.  ANALYSIS

Videan challenges the ALJ's unfavorable decision on the following five grounds: (1) new evidence establishes that Videan is disabled *per se* and is inconsistent with the ALJ's finding that she can perform sedentary work, (2) the ALJ failed to address "significant important evidence" in determining Videan's RFC, (3) she is unable to work on a regular and continuing basis, (4) the hypothetical questions to the VE were insufficient, and (5) the ALJ failed to engage in an analysis regarding Videan's ability to maintain employment.  (Pl.'s Br. at 6-10.)  For the following reasons, the decision of the Commissioner should be affirmed in part and reversed and remanded in part.

### A.  New Evidence

Videan seeks to introduce additional medical evidence in the form of a Psychiatric Review Technique and a Mental Medical Assessment, both completed by Dr. Lucas, and a Physical Medical Assessment completed by Dr. Lancourt, all of which were completed in August 2004.  (Pl.'s App. at 2, 17, 20.)  In light of the new evidence, Videan requests that the Court reverse the Commissioner's decision and award her benefits.  (Pl.'s Br. at 10.)  In the alternative, Videan requests that the Court remand this case to the Commissioner for reconsideration of the new evidence.  (*Id.*)

According to 42 U.S.C.A. § 405(g), courts may remand additional evidence to the Commissioner "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C.A. § 405(g).  In order for the new evidence to be material, "the new evidence [must] relate to the time period for which benefits were denied, and . . . not concern evidence of a later-acquired

disability or of the subsequent deterioration of a previously non-disabling condition." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985); *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989) (per curiam). Furthermore, the Court must find a reasonable probability that the "new evidence would change the outcome of the [Commissioner's] decision." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Because the additional evidence that Videan submits was not in existence at the time of the administrative proceedings, it satisfies the "new" requirement for remand. *See Haywood*, 888 F.2d at 1471. Although the additional evidence offers insight into Videan's recent mental health and functional limitations, it does not address her mental condition at the time of her disability application or at the time of her hearing. Moreover, the additional evidence post-dates the hearing by approximately ten months. Thus, the additional medical evidence appears to be, at best, evidence of deterioration of Videan's condition, which is immaterial. *See, e.g.*, *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (finding the additional evidence immaterial because it was dated "well outside the time frame in which the claimant applied for or was denied the benefits in question" and was evidence of a deteriorating condition).

With respect to the "good cause" requirement, the Court notes that since the additional evidence post-dates the hearing, it was impossible for Videan to present it at her hearing. However, Videan submitted additional evidence to the Appeals Council on February 26, 2004. (Tr. at 7.) Likewise, Videan could have also submitted the additional evidence that is now before the Court to the Appeals Council in February 2004, if Dr. Lucas' and Dr. Lancourt's reports had been requested earlier. Since Videan offers no explanation as to why this evidence was not previously presented, she fails to meet the "good cause" requirement for remand. Although the additional evidence could

possibly change the Commissioner's decision, for the foregoing reasons, the Court recommends that Videan's request for remand for the consideration of new evidence be denied.

**B.  RFC Determination and Ability to Work on a Regular and Continuing Basis**

Videan contends that substantial evidence does not support the ALJ's conclusion that she can perform other work on a regular and continuing basis.  (Pl.'s Br. at 7-9.)  More specifically, Videan asserts that the ALJ did not address "significant important evidence" when determining her RFC.  (*Id.*)  As indicated above, substantial evidence is "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but need not be a preponderance."  *Leggett*, 67 F.3d at 564.

Social Security Ruling 96-9p defines RFC as an individual's "maximum remaining ability to perform sustained work on a regular and continuing basis."  SSR 96-9p at 2 (1996).  "A 'regular and continuing basis' means eight hours a day, for five days a week, or an equivalent work schedule."  SSR 96-8p at 2 (1996).  The RFC assessment must include a discussion of the individual's ability to work on a regular and continuing basis and a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  (*Id.*)

The Court finds that the ALJ committed non-prejudicial error in determining Videan's RFC and whether she could work on a regular and continuing basis.  The ALJ explicitly determined that Videan possesses the RFC to perform a "significant range of sedentary work" with "frequent changes in position."  (Tr. at 17.)  However, the ALJ failed to cite to any medical facts or nonmedical evidence in support of his RFC determination, and he did not address whether Videan was able to work on a regular and continuing basis.  Even though the ALJ erred by failing to cite

to any medical facts or medical evidence in support of his RFC determination and by not engaging

in an analysis of Videan's ability to work on a regular and continuing basis, the decision must be

affirmed unless Videan can establish that she has been prejudiced by the error.  *See Mays v. Bowen*,

837 F.2d 1362, 1364 (5th Cir. 1988) (holding that "procedural perfection in administrative

proceedings is not required," and that an ALJ's decision will not be vacated unless the substantial

rights of a party have been affected).  Accordingly, the Court finds that Videan was not prejudiced

by the ALJ's errors because substantial evidence supports the ALJ's RFC determination and

Videan's ability to work on a regular and continuing basis.

     The objective medical evidence and Videan's inconsistent testimony supports the ALJ's

determination that Videan could perform sedentary work.  Sedentary work consists of "lifting no

more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers,

and small tools." 20 C.F.R. 404.1567(a).  Sedentary work primarily involves sitting (approximately

six hours of an eight hour workday) but occasionally requires walking and standing (no more than

two hours of an eight hour workday.)  SSR 96-9p at 3.

     First, the reports of Dr. Lazar and Dr. Lancourt support the ALJ's RFC assessment.  In July

2001, Dr. Lazar reported that Videan was feeling "great and is walking three miles daily." (Tr. at

167.)  In August 2001, Dr. Lancourt released Videan to perform her full-time work duties.  (*Id.* at

188.)  Dr. Lancourt reported that Videan could sit full-time with frequent changes in position, stand

and walk, push and pull up to twenty pounds, and lift and carry five to ten pounds.  (*Id.*)  Almost

three months postoperative, Dr. Lazar reported that Videan had an occasional catch in her left

sacroiliac joint but was walking two and a half miles daily and that her wound was well healed.  (*Id.*

at 166.)  Dr. Lazar then discharged Videan from active neurosurgical follow-up.  (*Id.*)  In October

2001, Dr. Lancourt reported that Videan was "certainly better than she was" (*Id.* at 184.)

Second, a Residual Functional Capacity Assessment, completed by a physician with DDS

in March 2002, revealed that Videan was able to stand, walk, and sit for about six hours in an eight

hour workday, occasionally lift and carry twenty pounds, and frequently lift and carry ten pounds.

(*Id.* at 233.)

Third, Videan's alleged limitations are inconsistent with other areas of her testimony.

Videan testified at her hearing that, although she continued to have debilitating, unpredictable back

pain, she would have returned to work if she had not been laid off and that she had since been

"diligently" searching for work.  (*Id.* at 292.)  Additionally, Videan admitted that she is able to work

in her garden, cook, drive, and attend church.  (*Id.* at 300-301, 304, 306.)

Finally, Videan has prescription medication for her condition, which renders her condition

not disabling.  Videan admitted that she has been prescribed pain medication and a muscle relaxer

for back pain.  (*Id.* at 294.)  However, Videan tries not to take her muscle relaxer because she claims

that it causes drowsiness.  (*Id.* at 294-95.)  Although it is not clear whether Videan's back pain is

less severe when she takes her muscle relaxer, she cannot be found disabled unless she has a good

reason for not following her prescribed treatment.  20 C.F.R. § 404.1530(a), (b).  No objective

medical evidence supports Videan's allegation that her muscle relaxer causes drowsiness.

Moreover, "[a] medical condition that can reasonable be remedied . . . by . . . medication is not

disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Notwithstanding objective medical evidence, pain can constitute a disabling condition;

therefore, the ALJ must make findings regarding a claimant's subjective complaints of pain. *Falco*,

27 F.3d at 163.  In the instant case, Videan's testimony contradicts the ALJ's finding that she can perform other work, but the ALJ expressly found that Videan's allegations regarding her limitations were not "totally creditable."  (*Id.* at 17.)  Despite substantial objective medical evidence, Videan has alleged debilitating and unpredictable back pain, which requires three to four days of bed rest a month.  (Tr. at 291; 293.)  Most significantly, Videan claims that she can tolerate no more than three hours of sitting and one hour of standing before she has to get up and walk around, stretch, sit with her feet elevated, or lie with her feet elevated for twenty minutes.  (*Id.* at 296-97.)  Her most comfortable position is lying with her feet elevated, and out of an eight hour "good" day, Videan spends two hours lying with her feet elevated.  (*Id.* at 297.)  At Videan's hearing, the VE testified that if Videan had to take long rest breaks to lie down during the day, then she would not be able to perform other work because such activity would not be accommodated in the work place.  (*Id.* at 317.)  Because the ALJ found that Videan's allegations were not "totally creditable," the substantial evidence analysis is incomplete unless the Court evaluates whether there is substantial evidence that supports the ALJ's creditability determination.

For the following reasons, the Court finds that substantial evidence supports the ALJ's creditability determination.  Despite her allegations of debilitating and unpredictable back pain, Videan has been "diligently" searching for work and is able to work in her garden, cook, drive, perform some volunteer work, and attend church.  (*Id.* at 184, 292, 300-301, 304, 306.)  Moreover, a RFC Assessment, completed by a physician with DDS in March 2002, established that medical and non-medical evidence did not fully support Videan's alleged physical limitations.  (*Id.* at 237.)  In fact, the assessment established that Videan was able to stand, walk, and sit for about six hours in an eight hour workday, occasionally lift and carry twenty pounds, and frequently lift and carry

ten pounds.  (*Id.* at 233.)  "At a minimum, objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of pain or other symptoms alleged."  *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992).  In other words, "subjective complaints of pain must . . . be corroborated by objective medical evidence." *Chambliss v. Massanari*, 269 F.3d 520, 521 (5th Cir. 2001).  The objective medical evidence does not corroborate Videan's subjective complaints of pain; instead, the subjective and objective evidence is contradictory.  As such, substantial evidence supports the ALJ's determination that Videan's statements regarding her physical limitations lacks creditability.  Likewise, because substantial evidence supports the ALJ's creditability determination, substantial evidence also supports the ALJ's RFC determination.

## C.  Insufficient Hypothetical to VE

Videan contends that the hypothetical questions posed to the VE do not satisfy the substantial evidence standard because the hypotheticals did not account for all of Videan's limitations.  (Pl.'s Br. at 9.)  In short, Videan argues that the hypotheticals are defective.

In *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994), the Fifth Circuit outlined the following standard for determining whether a hypothetical question is defective and whether a defective hypothetical question constitutes reversible error:

> Unless the hypothetical posed to the vocational expert by the ALJ can be said to reasonable incorporate all disabilities of the claimant recognized by the ALJ, and the claimant or his [or her] representative is afforded the opportunity to correct the deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

*Id.* at 436.   However, "failure to point out the problems in a defective hypothetical [does not] automatically salvage[] that hypothetical as a proper basis for determination of non-disability." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).

In this case, the ALJ specifically found that Videan had the RFC to perform sedentary work with "frequent changes in position."  (Tr. at 17.)  However, despite recognizing this limitation, the ALJ failed to incorporate the requirement that Videan would need to frequently change positions into the hypothetical questions posed to the VE.  (*Id.* at 315-18.)  After the VE confirmed that Videan was incapable of performing her past work, which the VE classified as skilled work (*Id.* at 315), the ALJ asked the VE the following three hypothetical questions: (1) assuming that Videan could not perform skilled work, were there semiskilled jobs that she could perform, to which the VE answered affirmatively; (2) whether Videan could perform those semiskilled jobs if she had the physical limitations that were discussed previously,[4] to which the VE answered negatively; and (3) if there were unskilled jobs that a person with Videan's past work experience could perform, to which the VE answered affirmatively.  (*Id.* at 316-18.)

The Court finds that the hypothetical questions posed to the VE are defective.  The ALJ's hypothetical questions to the VE " need . . .  [to] incorporate the disabilities that the administrative law judge recognizes."  *Wise v. Barnhart*, No. 03-30995, 2004 WL 1372922, at 1 (5th Cir. June 18, 2004); *see also Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (holding that an exception exists "for cases in which the vocational expert independently learned of the limitations (through other questioning at the hearing or outside review of the medical records, for example) *and* presumably accounted for them.") (emphasis added).   The ALJ's hypothetical questions are

---

[4]The ALJ specifically mentioned Videan's ability to stand, walk two and a half to three miles, the need to recline, and rest in bed.  (Tr. at 315.)

insufficient because they referred only to Videan's ability to stand, walk two and a half to three miles, the need to recline, and rest in bed.  (Tr. at 315-18.)  The hypothetical questions did not incorporate Videan's need to frequently change positions, which was not contradicted by other testimony or medical evidence.[5]  *See Boyd*, 239 F.3d at 707 (finding hypothetical question insufficient because it referred only to the claimant's memory and concentration problem and did not incorporate other impairments that were not contradicted by other testimony or records).  Even though the VE may have learned of Videan's need to vary her position by listening to her testimony, the hearing transcript does not  indicate that the VE accounted for that limitation.  Thus, the VE's possible knowledge of Videan's need to frequently change positions does not constitute an exception as defined by the Seventh Circuit.  *See Steele*, 290 F.3d at 942 (defining the exception).  The standard outlined in *Bowling* requires the ALJ to incorporate all disabilities recognized by the ALJ into the hypothetical questions posed to the VE.  In this case, the ALJ specifically included Videan's need to frequently change positions in his RFC determination; however, he omitted the limitation in his hypotheticals to the VE.  In sum, the ALJ did not reasonably incorporate Videan's recognized limitations into the hypothetical questions posed to the VE, thereby rendering the hypothetical questions defective.

The Court notes that cross-examination of the VE could have corrected the deficiencies in the ALJ's hypothetical questions by mentioning or suggesting to the VE limitations recognized by the ALJ but omitted from the hypothetical questions.  *Id.* at 436.  However, because Videan appeared *pro se* at the hearing, the ALJ had a duty to develop the record adequately.  *See id.*

---

[5]Videan testified that she needs to vary her position, such as sitting, lying, standing, and walking.  (Tr. at 293.)  Moreover, Dr. Lancourt reported that Videan was capable of sitting full-time with frequent changes in position.  (*Id.* at 188).

(holding that "when a claimant is unrepresented by counsel, the ALJ has a duty scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts" and that an ALJ's decision is reversible for failure to develop the record adequately only if the claimant is prejudiced as a result of the hearing).   As a result of the ALJ's failure to develop the record adequately, Videan was prejudiced because the other work that she was found capable of performing does not reflect the requirement that she needs to frequently change positions.

Nevertheless, a defective hypothetical question only constitutes reversible error if the ALJ based his unfavorable decision on the VE's answers to the defective hypothetical questions.  *Id.* at 436.   The ALJ clearly based his unfavorable decision on the VE's answers to the defective hypothetical questions because the ALJ stated the he found that Videan could perform other work "based on the testimony of the vocational expert."   (Tr. at 16.)[6]  Moreover, the VE concluded that Videan could work as a receptionist, data entry clerk, or an order clerk, and the ALJ expressly found that Videan could perform the duties of a receptionist and a data entry clerk.  (*Id.* at 316-17.)   As such, the ALJ not only posed defective hypothetical questions to the VE, but the ALJ also based his unfavorable decision on the VE's answers to those defective hypothetical questions.

Because the ALJ's decision was based on the VE's answers to defective hypothetical questions, the VE's testimony does not constitute substantial evidence.   Therefore, substantial evidence does not support the ALJ's finding that Videan was not disabled.  Consequently, the Court recommends that the District Court remand this case for further administrative proceedings consistent with this decision.  Specifically, on remand, the ALJ must reasonably incorporate all of

---

[6]In his written decision, the ALJ specifically stated that "[b]ased on the testimony of the vocational expert, the undersigned concludes that . . . [Videan] is capable of making a successful adjustment to work that exists in significant numbers in the national economy."  (Tr. at 16.)

Videan's disabilities and limitations that the ALJ recognizes into the hypothetical questions posed

to the VE and afford Videan's counsel the opportunity to correct any proposed deficiencies in the

hypothetical questions.

## D.  Maintaining Employment

Lastly, Videan asserts that the ALJ erred by failing to assess her ability to maintain

employment for a significant period of time.  (Pl.'s Br. at 10.)  "Usually, the issue of whether the

claimant can maintain employment for a significant period of time will be subsumed in the analysis

regarding the claimant's ability to obtain employment." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th

Cir. 2003) (per curiam).  The ALJ is not required to make an explicit finding in every case that the

claimant can not only obtain employment but also maintain employment. *Dunbar v. Barnhart*, 330

F.3d 670, 672 (5th Cir. 2003) (per curiam).  Unless evidence exists that the claimant will be unable

to maintain employment despite his or her ability to perform employment, or "the ALJ did not

appreciate that an ability to perform work on a regular and continuing basis is inherent in the

definition of RFC," a separate finding that the claimant can maintain employment is not required.

*Id.* at 672.

The Court finds that the ALJ did not err by failing to assess whether Videan could maintain

employment for a significant period of time.  The ALJ concluded that Videan was not disabled based

on her RFC.  (Tr. at 16.)  In his RFC determination, the ALJ cited both the regulation and a Social

Security Ruling defining RFC, both of which describe RFC as the ability to work on a "regular and

continuing basis."[7]  (*Id.* at 15.)  The ALJ further found that Videan was "capable of making a

successful adjustment to work that exists in significant numbers in the national economy." (*Id.* at

---

[7]The ALJ cited 20 C.F.R. § 404.1545 and SSR 96-8p.

16.) Therefore, the ALJ appreciated that the ability to perform work on a "regular and continuing basis" is inherent in the definition of RFC, so a separate finding that Videan could maintain employment is not required on this ground.

The ALJ was not required to make a separate finding that Videan could maintain employment for a significant period of time because Videan's own testimony was the only evidence that suggested that she was unable to do so. Videan testified that her back pain is unpredictable and requires three to four days of bed rest during any given month. (*Id.* at 291, 293.) However, as indicated above, the ALJ found Videan's testimony not "totally credible." (*Id.* at 17.) To support a finding of disability, "the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time," and an ALJ "may explore this factual predicate in connection with the claimant's physical diagnosis as well as in the ability-to-work determination." *Frank*, 326 F.3d at 619. Because the ALJ concluded that Videan's testimony was not "totally credible" and because the Court finds that substantial evidence support the ALJ's credibility determination, no evidence exist that suggest that Videan's ability to maintain employment for a significant period of time would be compromised.

Because the ALJ appreciated that the ability to perform work on a "regular and continuing basis" is inherent in the definition of RFC and because no evidence exists that would suggest that Videan's ability to maintain employment for a significant period of time would be compromised, the Court finds that the ALJ was not required to make a separate finding that Videan could maintain employment.

**E. Request for Medical Expert, Psychological Expert, and Vocational Expert**

21

Upon remand, Videan requests the presence of a medical expert, a psychological expert, and a VE at any subsequent hearing. (Pl.'s Br. at 10.)  Although the Court recommends that the District Court remand this case, the Court concludes that the decision to have a medical expert and a psychological expert present at any subsequent hearing should be left to the ALJ's discretion.  An ALJ is not required to call a medical expert to testify at a hearing.  *See* 20 C.F.R. § 404.1527(f)(2)(iii) (stating that "[a]dministrative law judges *may* also ask for and consider opinions from medical experts.") (emphasis added).  The claimant has the initial burden of proving that he or she is disabled.  *Leggett*, 67 F.3d at 564.  Accordingly, the Court recommends that Videan's request for a medical expert and a psychological expert be denied and the decision whether to appoint expert witnesses be left to the discretion of the ALJ.  However, should the District Court accept the Court's findings and recommendation, a VE should be present at the subsequent hearing.

## IV.  CONCLUSIONS

The Court concludes that, although the additional evidence that Videan seeks to introduce could possibly change the Commissioner's decision, the additional evidence does not meet the "material" and "good cause" requirements for remand.  The Court further concludes that substantial evidence supports the ALJ's RFC determination and Videan's ability to work on a regular and continuing basis.  However, having concluded that the ALJ's defective hypothetical questions constituted reversible error, the Court recommends that District Court remand this case with instructions that the ALJ incorporate all of Videan's disabilities and limitations that the ALJ recognizes into the hypothetical questions posed to the VE and afford Videan's counsel the opportunity to correct any proposed deficiencies in the hypothetical questions.  The Court also finds that the ALJ did not err by failing to determine whether Videan is capable of maintaining

employment.  Lastly, the Court recommends that the decision to have a medical expert and a psychological expert present at any subsequent hearing should be left to the ALJ's discretion.

## V.  <u>RECOMMENDATION</u>

For the foregoing reasons, the Court recommends that the District Court deny Videan's request for remand for the consideration of new evidence, affirm the Commissioner's RFC determination, reverse and remand the Commissioner's finding of not disabled for further administrative proceedings consistent with this decision, and deny Videan's request for the presence of a medical and psychological expert.  On remand, the Commissioner should begin at step five of the sequential five-step disability inquiry.

SO RECOMMENDED. 6th day of July, 2006.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

23

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

24